UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEREMY JOSEPH REYNOLDS,

                                  Plaintiff,

                                                                        9:20-CV-00686
                                                                        (TJM/ML)

v.

T. STONE, C.O., Clinton Correctional Facility;
K. WOOD, C.O., Clinton Correctional Facility;
BOLA, C.O., Clinton Correctional Facility;
GONYO, C.O., Clinton Correctional Facility;
W. LECLAIR; T. KING, Sergeant;
D. BOMBARDIER, Sergeant; D. PROVOST;
J. ORMSBY, Correction Officer; C.O. MCSHANE;
B. MCINTYRE, Correction Officer;
S. SISKAVICH, Correction Officer; A. CHRISTON,
Correction Officer; D. SMITH, Correction Officer;
N. DARRAH, Correction Officer; P. CLANCY,
Correction Officer; K. RANDALL, Sergeant;
Z. REESE, Correction Officer;
J. NEPHEW, Correction Officer; L. FORKEY,
Correction Officer; M. CARTER, Correction Officer;
M. ASHLINE, Correction Officer;
 A. CYMBRAK, Correction Officer;
C. DELUTIS, Captain; J. MAHAN, Correction Officer;
and T. BAXTER, C.O., Clinton Correctional Facility,

                                  Defendants.

_____

APPEARANCES:                                                       OF COUNSEL:


JEREMY JOSEPH REYNOLDS
   Plaintiff, *Pro Se*
Montgomery County Jail
P.O. Box 432
Fultonville, New York 12072

LETITIA A. JAMES                                    KONSTANDINOS
Attorney General for the State of New York          D. LERIS, ESQ.
  Counsel for Defendants                            Assistant Attorney General
The Capitol
Albany, New York 12224


MIROSLAV LOVRIC, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for a Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge. Currently before the Court, in this civil rights action filed by Jeremy Joseph Reynolds ("Plaintiff") against M. Ashline, Correction Officer; D. Bombardier,[1] Sergeant; Bola, Correction Officer, Clinton Correctional Facility; B. McIntyre, Correction Officer; S. Siskavich, Correction Officer; A. Christon, Correction Officer; D. Smith, Correction Officer; N. Darrah, Correction Officer;[2] P. Clancy, Correction Officer; Z. Reese, Correction Officer; T. Baxter, Correction Officer, Clinton Correctional Facility; Gonyo, Correction Officer, Clinton Correctional Facility; J. Nephew, Correction Officer; L. Forkey, Correction Officer; M. Carter, Correction Officer; A. Cymbrak, Correction Officer;[3] J. Mahan, Correction Officer; K. Randall, Sergeant; T. King, Sergeant; W. LeClair;[4] C. Delutis, Captain;[5] Correctional Officer McShane; T. Stone, Correction Officer, Clinton Correctional Facility; K. Wood, Correction Officer, Clinton Correctional Facility; J. Ormsby, Correction Officer; and D. Provost (collectively "Defendants"), is a motion for partial summary judgment (Dkt. No. 21)

---

[1]    The Clerk of Court is directed to correct the name of this Defendant from "D. Bomradier, Sergeant" to "D. Bombardier, Sergeant" on the Court's docket. (*See* Dkt. No. 24 at 1 [Defs.' Answer].)

[2]    The Clerk of Court is directed to correct the name of this Defendant from "N. Darras, Correction Officer" to "N. Darrah, Correction Officer" on the Court's docket. (*See* Dkt. No. 24 at 1.)

[3]    The Clerk of Court is directed to correct the name of this Defendant from "A. Cymbark, Correction Officer" to "A. Cymbrak, Correction Officer" on the Court's docket. (*See* Dkt. No. 24 at 1.)

[4]    The Clerk of Court is directed to amend the name of this Defendant from "W. Leclar" to "W. LeClair" on the Court's docket. (*See* Dkt. No. 24 at 1.)

[5]    The Clerk of Court is directed to amend the name of this Defendant from "C. Deltis, Captain" to "C. Delutis, Captain" on the Court's docket (*See* Dkt. No. 24 at 1.)

filed by Defendants McShane, J. Ormsby, T. Stone, D. Provost, M. Ashline, D. Bombardier, and K. Wood[6] (referred to herein as "Moving Defendants"). For the reasons set forth below, I recommend that Moving Defendants' motion be granted.

---

[6]    The Court granted Defendant W. Wood's request to join this motion (Dkt. No. 34) on February 23, 2021. (Dkt. No. 35.)

## TABLE OF CONTENTS

I.     RELEVANT BACKGROUND ......................................................................... 1

   A.   Plaintiff's Claims and Procedural History ........................................... 1

   B.   Statement of Material Facts ................................................................. 4

   C.   Moving Defendants' Motion for Partial Summary Judgment .................... 7

II.    RELEVANT LEGAL STANDARDS ............................................................ 8

   A.   Standard Governing a Motion for Summary Judgment ......................... 8

   B.   Standard Governing Exhaustion of Administrative Remedies .............. 10

III.   ANALYSIS ................................................................................................. 14

   A.   Plaintiff's Failure to Respond ............................................................. 14

   B.   PLRA Exhaustion ................................................................................ 16

I.    **RELEVANT BACKGROUND**

A.    **Plaintiff's Claims and Procedural History**

Plaintiff Jeremy Reynolds commenced this action on June 19, 2020 by filing a *pro se*

civil rights Complaint pursuant to 42 U.S.C. § 1983. (Dkt. No. 1.) Plaintiff's Complaint alleged

claims relating to an incident on June 11, 2019 while in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS") at Clinton Correctional

Facility ("Clinton C.F."). Plaintiff's Complaint named sixteen defendants including the governor,

commissioners, correction officers, and superintendents. (Dkt. No. 1 at 1-7.) Plaintiff also filed

an application to proceed *in forma pauperis* together with the Complaint. (Dkt. No. 5.)

On August 11, 2020, Judge Thomas J. McAvoy, Senior United States District Judge,

issued a Decision and Order (Dkt. No. 7) pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C.

§1915A(b), granting Plaintiff's application to proceed *in forma pauperis* but dismissing

Plaintiff's Complaint in its entirety. (Dkt. No. 7 at 15.) In light of Plaintiff's *pro se* status,

however, the Court afforded Plaintiff an opportunity to file an amended complaint. (*Id*.)

On August 31, 2020, Plaintiff filed the Amended Complaint. (Dkt. No. 8.) Liberally

construed, Plaintiff's Amended Complaint again asserts claims relating to an incident on June

11, 2019 while confined at Clinton C.F. (*See generally id*.) Specifically, Plaintiff alleges that on

June 11, 2019, at approximately 4:40 p.m., a fight occurred among inmates in Clinton C.F.'s

main yard between four inmates. (*Id*. at 10.) Plaintiff alleges that he was not involved in the

fight, but that Defendant "Ashline gave the order []to get on the ground and stop fighting,

[which] I did[]." (*Id*.) Plaintiff alleges that the inmates continued to fight, and Defendant

Bombardier "activated a lev[e]l . . ." (*Id*.) Plaintiff next alleges that Defendant Provost "[f]ired

one state issued [r]ound o[f] [p]ro[j]ectile into the yard, at [which] time all [of the] inmates got

onto the ground and stop[p]ed fighting." (*Id*.) Plaintiff alleges that Defendant "Provost used [exces]sive [f]orce [b]y [f]iring a [r]ound [into] a group of inmates that [were] already on the ground" and "[f]ir[ing] into a group o[f] inmates that had [n]o part in this [four] man fight." (*Id*.) Plaintiff further alleges that Defendant Ashline "could clearly see that . . . [Defendant] Provost was [f]iring at inmates that [were] not involved in the [four] man [f]ight." (*Id*.) Plaintiff also alleges that after the inmates got on the ground, Defendant Ormsby fired one more time. (*Id.*)

Plaintiff then alleges that Defendants McShane, Stone, Wood, and Provost fired six more rounds into the yard, one of which struck Plaintiff in the face, causing swelling to his eye and a tooth to fall out. (*Id*.). Plaintiff alleges that Defendants Wood, Stone, Provost, Ormsby, and McShane violated his Eighth Amendment rights by using excessive force, and that Defendants Ashline and Bombardier "failed to intervene" to stop those guards' use of force, in violation of the Eighth Amendment. (*Id*. at 10-11.)

The Amended Complaint next alleges that Defendants Bola, McIntyre, Siskavich, Christon, Smith, Darrah, Clancy, Reese, Baxter, Gonyo, Nephew, Forkey, Carter, Cymbrak, Mahan, Randall, King, LeClair, Delutis, and James all reported to the main yard to provide additional "security [and] safety," but "all officers" fled from the yard when the inmates continued to attack each other with weapons. (*Id*. at 11.) After the officers left the prison's main yard, Plaintiff alleges he was attacked by approximately twenty unidentified inmates with razors and other weapons, rendering him unconscious and injured. (*Id*. at 12.) Plaintiff alleges that when Defendants left the yard, they violated the Eighth Amendment by failing to protect him from the other inmates who attacked him. (*Id*. at 11-12.)

On September 11, 2020, Judge McAvoy issued a second Decision and Order (Dkt. No. 9) pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. §1915A(b). Construing the Amended

Complaint with "the utmost leniency," Judge McAvoy held that the following claims in Plaintiff's Amended Complaint survived the Court's *sua sponte* review: (1) Eighth Amendment excessive force against McShane, Ormsby, Wood, Stone, and Provost; and (2) Eighth Amendment failure to protect claims against Ashline, Bombardier, Bola, McIntyre, Siskavich, Christon, Smith, Darrah, Clancy, Reese, Baxter, Gonyo, Nephew, Forkey, Carter, Cymbrak, Mahan, Randall, King, LeClair, Delutis, McShane, Stone, Wood, and Ormsby to proceed. (Dkt. No. 9 at 11-12.)

In the instant motion for partial summary judgment (Dkt. No. 21), Moving Defendants argue that the undisputed material facts show that Plaintiff failed to exhaust his administrative remedies as to some of the remaining claims in the case. Specifically, Moving Defendants argue that Plaintiff failed to exhaust his administrative remedies as to his claims that Defendants McShane, Ormsby, Stone, Provost, and Wood violated the Eighth Amendment by using excessive force when they fired rounds into the prison's yard, one of which struck Plaintiff in the face, and that Defendants Ashline and Bombardier violated the Eighth Amendment by failing to intervene to stop those guards from using excessive force. (*Id.*) Moving Defendants do not seek, in this motion, summary judgment on Plaintiff's Eighth Amendment claims relating to the guards leaving the yard and allegedly failing to prevent the other inmates from attacking him.[7]

---

[7]    I find that Moving Defendants' description of the remaining claims in this case is consistent with Judge McAvoy's second Decision and Order, which held that certain "excessive force" and "failure to protect" claims in Plaintiff's Amended Complaint survived the Court's *sua sponte* review. (Dkt. No. 9 at 11-12.) Significantly, Moving Defendants' instant motion for partial summary judgment is brought pursuant to Fed. R. Civ. P. 56 and is based on the undisputed material facts of this case, whereas Judge McAvoy's second Decision and Order was based merely on the Court's *sua sponte* initial review of Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. §1915A(b). *See, e.g.*, *Gochnour v. Burri*, 15-CV-06174, 2018 WL 10944594, at *3 (W.D.N.Y. July 9, 2018) (agreeing with defendants, on a motion for summary judgment, that despite a plaintiff styling a claim as asserting a "failure to protect" he was actually asserting a "failure to intervene" claim).

The Court also notes that, in his Amended Complaint, nearly all of the Moving Defendants accused of "excessive force" and "failing to intervene" are also accused of "failing to protect" Plaintiff from the other inmates. (*See generally*, Dkt. No. 8 at 10-12.) Only Defendant Provost, who Plaintiff only alleged to have used excessive force by firing rounds at Plaintiff, is not also accused of failing to protect him from the other inmates. As a result, Moving Defendants argue that Defendant Provost should be dismissed if the motion is granted. (Dkt. No. 21, Attach. 4 at 4.)

For a complete discussion of Plaintiff's allegations and the operative claims remaining in this case, refer to the Amended Complaint (Dkt. No. 8) and Judge McAvoy's second Decision and Order (Dkt. No. 9).

### B.     Statement of Material Facts

Unless otherwise noted, the following facts were asserted and supported by Moving Defendants in their Rule 7.1 Statement (Dkt. No. 21, Attach. 5 [Movant's Rule 7.1 Statement]) and not denied by Plaintiff in a Rule 7.1 Response.[8]

1.     Plaintiff was an inmate in the custody of the DOCCS during the time of all events alleged in the Amended Complaint.

2.     The inmate grievance process established by 7 N.Y.C.R.R. § 701.5 involves three steps: (1) the inmate must file a complaint to the Inmate Grievance Resolution Committee

---

[8]     Because Plaintiff did not file a response to Moving Defendants' Rule 7.1 Statement of Material Facts, the Court may conclude that Plaintiff has admitted each of Moving Defendants' factual statements. *Morris v. Plummer*, 09-CV-0734, 2011 WL 1114263, at *1 (N.D.N.Y. Mar. 25, 2011) (Mordue, C.J.) ("Where a plaintiff has failed to respond to a defendant's statement of material facts, the facts as set forth in defendant's Rule 7.1 statement will be accepted as true to the extent that those facts are supported by evidence in the record.") (citation omitted). I have fully analyzed the consequences of Plaintiff's failure to oppose Moving Defendants' motion and respond to the Rule 7.1 Statement of Material Facts in Section III.A. below.

("IGRC") within 21 calendar days of an alleged incident at the individual facility where the inmate is housed, even if the alleged incident occurred at another facility; (2) if dissatisfied with the IGRC recommendation, the inmate may appeal it to the Superintendent within 7 calendar days after receipt of the IGRC's written response; and (3) if dissatisfied with the Superintendent's response, the inmate may appeal the decision to the Central Office Review Committee ("CORC") within 7 calendar days after receipt of the Superintendent's written response.

3.      An exception to the 21-day time limit for filing a grievance may be granted if there are mitigating circumstances, which are provided for in 7 N.Y.C.R.R. § 701.6(g).

4.      Any request for an extension of time to file a grievance must be submitted in writing to the grievance clerk at the facility where the inmate is housed within 45 days of the alleged occurrence.

5.      In this action, Plaintiff asserts an Eighth Amendment excessive force and failure to protect claims against Moving Defendants.

6.      Plaintiff claims that Defendants McShane, Ormsby, Wood, Stone, and Provost violated his Eighth Amendment rights on June 11, 2019, at approximately 4:00 p.m. when they fired tear gas cannisters into the main yard at Clinton C.F., striking Plaintiff in the face. Plaintiff also claims that Defendants Ashline and Bombardier were present on June 11, 2019 when tear gas cannisters were being fired into the main yard but did not intervene to stop the officers from discharging their weapons.

7.      Plaintiff's Eighth Amendment excessive force and failure to intervene claims against Moving Defendants are the proper subject for a grievance under DOCCS grievance procedures outlined in 7 N.Y.C.R.R. § 701.1 *et seq*.

5

8.     At all relevant times, Plaintiff was an inmate incarcerated at Clinton C.F.

9.     Plaintiff was incarcerated at Clinton C.F. from June 25, 2018 through August 5, 2019.

10.     During the time of all events alleged in the amended complaint, Clinton C.F. had a fully functioning inmate grievance process available: DOCCS Inmate Grievance Program ("IGP").

11.     Plaintiff did not file any grievances concerning his excessive force and failure to intervene claims against Moving Defendants that are the subject of this motion.

12.     Plaintiff did, however, file three relevant grievances with Clinton C.F.'s grievance office on July 8, 2019, referencing his failure to protect claims, which are not the subject of this motion, related to an incident on June 11, 2019: Grievance No. CL-76246-19; Grievance No. CL-76245-19; and Grievance No. CL-76294-19.

13.     Plaintiff did not mention his excessive force and failure to intervene claims against the Moving Defendants that are the subject of this motion in Grievance Nos.: CL-76246-19; CL-76245-19; or CL-76294-19.

14.     The deadline for Plaintiff to file a grievance with respect to his claims against the Moving Defendants that are the subject of this motion was July 2, 2019.

15.     Plaintiff did not submit a written request for an extension of time to file a grievance against Moving Defendants concerning his excessive force and failure to intervene claims that are the subject of this motion.

16.     The deadline for Plaintiff to submit a written request to file a late grievance concerning his claims against Moving Defendants that are the subject of this motion was July 26, 2019.

6

17. Plaintiff did not appeal any grievances relating to his excessive force and failure to intervene claims against Moving Defendants that are the subject of this motion to CORC.

18. Plaintiff is familiar with DOCCS IGP—Plaintiff appealed Grievance Nos. CL-76246-19 and CL-76245-19 to CORC, the third and final step of DOCCS IGP.

### C.    Moving Defendants' Motion for Partial Summary Judgment

Generally, in support of their motion for partial summary judgment, Moving Defendants argue that Plaintiff has failed to exhaust his administrative remedies as to the excessive force and failure to intervene claims. (Dkt. No. 21, Attach. 4 [Moving Defs.' Mem. of Law].) More specifically, Moving Defendants argue that the three grievances filed by Plaintiff, Grievance Nos. CL-76246-19, CL-76245-19, and CL-76294-19, provide a "detailed description of how [Plaintiff] was assaulted by inmates after the officers left the yard[,]" but do not contain any description of Plaintiff's claims made in this Court relating to the officers firing rounds at Plaintiff (and being struck in the face) prior to being attacked by other inmates. (*Id*. at 6-8). Moving Defendants thus argue that Plaintiff has not filed any grievance regarding his excessive force and failure to intervene claims against them, much less that Plaintiff has "exhausted" all administrative remedies regarding those claims. (*Id*.)

Moving Defendants next argue that, to the extent Plaintiff argues that the grievance program was "unavailable" to him because prison officials allegedly failed to respond to the three grievances he filed within twelve months, Plaintiff's argument must be rejected because none of the three grievances mention the claims subject to this motion – that Defendants Provost, Ormsby, McShane, Stone, and Wood used excessive force by firing rounds into the yard and striking Plaintiff and that Defendants Ashline and Bombardier failed to "intervene" stop those guards from using excessive force. (*Id*. at 7-8.) Additionally, Moving Defendants argue that

7

Plaintiff's "conclusory" allegation, which he makes in his Amended Complaint, that the grievance procedure was "unavailable" to him, cannot outweigh the evidence in this case showing that Plaintiff understood how to both file and to appeal a grievance, and in fact, did both. (*Id*. at 8.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[9] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Id*. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However,

---

[9]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

when the movant has met its initial burden, the non-movant must come forward with specific

facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant

willfully fails to respond to a motion for summary judgment, a district court has no duty to

perform an independent review of the record to find proof of a factual dispute–even if that non-

movant is proceeding *pro se*.[10] "As has often been recognized by both the Supreme Court and

Second Circuit, even *pro se* litigants must obey a district court's procedural rules." *Cusamano*,

604 F. Supp. 2d at 426-27 & n.4.

Of course, when a non-movant willfully fails to respond to a motion for summary

judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that

the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

Rather, as indicated above, the Court must assure itself that, based on the undisputed material

facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v.

Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin,

C.J.); N.D.N.Y. L.R. 7.1(b)(3).

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set

forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

---

[10]    *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.)
(citing cases). The Court extends special solicitude to the *pro se* litigant largely by ensuring that
he or she has received notice of the consequences of failing to properly respond to the motion for
summary judgment. *Id*. at 426 & n.3 (citing cases).

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[11]–even when the non-movant was proceeding *pro se*.[12]

### B.  Standard Governing Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"),[13] "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) ("The [PLRA] mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and

---

[11]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[12]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

[13]    Although Plaintiff was released after filing the Amended Complaint, the PLRA's exhaustion requirement still applies because he was confined when he filed this lawsuit. *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (citation omitted); *see also Gonzalez v. Morris*, 14-CV-1438, 2018 WL 1353101, at *3 n.12 (N.D.N.Y. Mar. 15, 2018) (Sharpe, J.), *aff'd*, 824 F. App'x 72 (2d Cir. 2020). The Court understands that Plaintiff is now confined again. (Dkt. No. 37.)

doing so properly. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "'using all steps that the [government] agency holds out, and doing so properly.'" (quoting *Woodford*, 548 U.S. at 90)). In New York State prisons, DOCCS has a well-established three-step IGP. 7 N.Y.C.R.R. § 701.5.

First, an inmate must file a complaint with the facility IGP clerk within twenty-one days of the alleged occurrence. 7 N.Y.C.R.R. § 701.5(a)(1). A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to CORC for a decision under the process applicable to the third step. *Id.* § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

Grievances claiming employee harassment, including claims of excessive force, "are of particular concern to the administration of [DOCCS] facilities," and subject to an expedited procedure whereby the grievance goes directly to the facility superintendent. *Id.* § 701.8; *see,*

*e.g., Torres v. Carry*, 691 F. Supp. 2d 366 (S.D.N.Y. 2009) (Section 701.8 has been found applicable to claims of excessive force.). The superintendent is required to initiate an in-house investigation by higher-ranking supervisory personnel; request an investigation by the Inspector General's office; or request an investigation by the New York State Police Bureau of Investigation if the superintendent determines that criminal activity may be involved. 7 N.Y.C.R.R. § 701.8(d).

A grievance referred to the superintendent and determined to be an allegation of harassment may not be withdrawn and must be addressed by the superintendent. *Id.* The superintendent is required to render a decision on the grievance within twenty-five calendar days, and extensions may be granted only with the consent of the grievant. *Id.* § 701.8(f). If the superintendent fails to respond within the required twenty-five days, the grievant may appeal the grievance to CORC by "filing a notice of decision to appeal (form #2133) with the inmate grievance clerk." *Id.* § 701.8(g). If the grievant wishes to appeal the superintendent's response to CORC, he must do so within seven calendar days of receipt of that response. *Id.* § 701.8(h).

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).") (quotations marks and citations omitted).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first

be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (quotation marks and citations omitted). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry. *Mena v. City of New York*, 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Because non-exhaustion is an affirmative defense, the defendants bear the burden of showing that a prisoner has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216. The plaintiff must then establish the IGP grievance procedure was unavailable to him under *Ross*. *Id.*

III.    **ANALYSIS**

After carefully considering the matter, I recommend that Moving Defendants' motion for partial summary judgment (Dkt. No. 21) be granted for the following reasons.

A.    **Plaintiff's Failure to Respond**

At the outset, a threshold issue to be addressed is the significance of Plaintiff's failure to oppose Moving Defendants' motion for partial summary judgment or respond to Moving Defendants' Rule 7.1 Statement of Material Facts. Despite the Court *sua sponte* granting Plaintiff an extension of time to respond to the instant motion by March 16, 2021 (Dkt. No. 35), Plaintiff did not file a response in opposition to the motion or the Rule 7.1 Statement of Material Facts. (*See generally*, Docket.)

Under this Court's Local Rule 7.1(b)(3), by failing to oppose the motion, Plaintiff has effectively consented to the granting of the relief sought. Local Rule 7.1(b)(3) provides:

> Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y. L.R. 7.1(b)(3); *see also Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014) (holding that the district courts may enter summary judgment in favor of the moving party where the non-moving party fails to respond in opposition, but not without first "ensur[ing] that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production" and "determine[ing] whether the legal theory of the motion is sound").

As previously noted, there are additional consequences flowing from Plaintiff's failure to file a response to Moving Defendants' Rule 7.1(a)(3) Statement of Material Facts. Local Rule 7.1 provides, in relevant part, that "[t]he Court shall deem admitted any properly supported facts

14

set forth in the Statement of Material Facts that the opposing party does not specifically controvert." Of course, *pro se* litigants are entitled to some measure of forbearance when defending against summary judgment motions. *Jemzura v. Public Serv. Comm'n*, 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (McAvoy, J.). The deference owed to *pro se* litigants, however, does not extend to relieving them of the ramifications associated with the failure to comply with the court's local rules. *See, e.g.*, *Robinson v. Delgado*, 96-CV-0169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J.). Importantly, a party's failure to oppose a motion for summary judgment does not mean the motion is automatically granted. *Ferran v. City of Albany*, 14-CV-1362, 2019 WL 6611301, at *3 (N.D.N.Y. Dec. 5, 2019) (Sharpe, J.). "[A]n unopposed motion for summary judgment may be granted 'only if the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law.'" *Id*. (quoting *Champion*, 76 F.3d at 486).

Plaintiff has failed to respond to Moving Defendants' motion, including their Rule 7.1 Statement of Material Facts. Plaintiff was also warned of the consequences of failing to properly respond to Moving Defendants' Rule 7.1 Statement (Dkt. Nos. 21, 23), and he failed to do so. As a result, I recommend that the Court deem the facts contained in Moving Defendants' Rule 7.1 Statement as having been admitted to the extent they are supported by accurate record citations. *See, e.g.*, *Latouche v. Tompkins*, 09-CV-308, 2011 WL 1103045, at *1 (N.D.N.Y. Mar. 23, 2011) (Mordue, C.J.); *see also Champion*, 76 F.3d at 486. But despite not opposing Moving Defendants' motion on its merits, consistent with the law of this district and as deference to Plaintiff's *pro se* status, I will fully analyze the merits of the motion to ensure that the record evidence satisfies Moving Defendants' burden of showing that Plaintiff failed to exhaust his administrative remedies.

15

B.    **PLRA Exhaustion**

Applying the legal standard set forth above, the issue of exhaustion involves a two-step analysis: (1) the Court must determine whether Plaintiff properly exhausted his administrative remedies by following the steps required by the administrative review process; and (2) if Plaintiff did not exhaust his administrative remedies, the Court must then determine whether an administrative remedy was available to Plaintiff.

1.    **Plaintiff's Failure to Exhaust**

As to step one, Moving Defendants argue that Plaintiff did not exhaust his administrative remedies with respect to the excessive force and failure to intervene claims because he did not mention any of the facts or allegations underlying those claims in any of the three grievances he filed while he was confined at Clinton C.F. (Dkt. No. 21, Attach. 4.) Moving Defendants' argument thus raises the question of whether any of the facts described in Plaintiff's three grievances (Nos. CL-76246-19, CL-76245-19, and CL-76294-19) included a sufficient factual basis such that prison officials were on "notice" of the excessive force and failure to intervene claims now brought against Moving Defendants in this action.

"The PLRA's exhaustion requirement is designed to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Johnson v. Testman*, 380 F.3d 691, 697 (quoting *Porter*, 534 U.S. at 524-25). The Second Circuit has likened the sufficiency of a prison grievance to that of notice pleading, stating that "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Johnson*, 380 F.3d at 697. "[T]he grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Id*. (internal quotation omitted). At bottom, "inmates must provide enough

information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Id*.

IGP Regulations specifically require that the grievance contain, among other things, "a concise, specific description of the problem and the action requested." 7 N.Y.C.R.R. § 701.5(a)(2). But a review of a prison grievance is "liberal," and "a claim may be exhausted when it is closely related to, but not explicitly mentioned in an exhausted grievance[.]" *Blackhawk v. Hughes,* 20-CV-0241, 2021 WL 862257, at *10 (N.D.N.Y. Jan. 19, 2021) (Dancks, M.J.) (internal quotations omitted), *report and recommendation adopted*, 2021 WL 752838 (N.D.N.Y. Feb. 26, 2021) (Kahn, J.). It is "appropriate to afford *pro se* inmates a liberal grievance pleading standard, the grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006). To be sure, a plaintiff has not adequately alerted prison officials where he did not "describe the *conduct*" underlying the claims later brought in court. *Murray v. Gillani*, 12-CV-401, 2013 WL 838351, at *8 (N.D.N.Y. Feb. 11, 2013) (Baxter, M.J.) (emphasis in original), *report and recommendation adopted*, 2013 WL 838306 (N.D.N.Y. Mar. 6, 2013) (Kahn, J.).

Plaintiff's three grievances, all filed on July 8, 2019, are devoid of any factual allegations relating to the misconduct underlying the claims subject to this motion. Grievance CL-76246-19 only discusses being attacked by other inmates and states that Plaintiff "feel[s] the prison staff is responsible[.]" (Dkt. No. 21, Attach. 2 [Gregory Decl.]) at 13.). Grievance CL-76245-19 complains that Plaintiff has not received a response to a different grievance. (*Id*. at 20.) Finally, Grievance CL-76294-19 complains about not receiving any recreational time, which Plaintiff alleges is in retaliation for submitting his previous grievances "about an attack on 6-11-19 w[h]ere CO's [f]ailed to protect [me] and I received injuries[.]" (*Id*. at 26.)

Individually and collectively, none of the three grievances mention that any prison guards were firing at Plaintiff or that he was struck in the face by a round or projectile, let alone that other guards did not stop those guards from firing rounds at him. Although Plaintiff need not, in his initial grievances, name the specific guards which he now accuses of excessive force and a failure to intervene or any specific legal theories, the law does require that, at a minimum, he provide prison officials with notice of the misconduct from which he seeks redress so that the prison may take appropriate responsive measures. *Johnson*, 380 F.3d at 697. Here, however, Plaintiff's grievances complain of misconduct that specifically relates to the claims that are not subject to this motion – that certain correctional officers "failed to protect" Plaintiff from other inmates – and not that the Moving Defendants shot Plaintiff in the face with a projectile in the yard at Clinton C.F.

Plaintiff's omission of any factual basis in his three grievances that could ostensibly support the allegations now made in this Court regarding the claims subject to this motion cannot be overlooked. Even under the Court's liberal review afforded to Plaintiff's grievances, Plaintiff simply did not put prison officials on notice of the wrong or misconduct allegedly committed regarding the claims subject to this motion. I therefore find that Moving Defendants have carried their burden of persuasion, and the undisputed material facts show that Plaintiff did not exhaust his administrative remedies with respect to the excessive force and failure to intervene claims against Moving Defendants.

## 2. Availability of Administrative Remedies

Even if the Court finds that Plaintiff failed to exhaust his administrative remedies, that does not end the exhaustion review. The Court must now determine whether an administrative remedy was available to Plaintiff.

Moving Defendants argue that the undisputed evidence shows that administrative remedies were available to Plaintiff and that the record shows he knew how to both file and appeal grievances, notwithstanding his "conclusory" allegations that he did not receive a response to his grievances within 12 months and that "I['Jve tried to exhaust my rem[edies] and as the[re] is no other grievance appeal l[e]ft to me and the policy is so op[aque] I have no more rem[edie]s op[e]n to me." (Dkt. No. 8 at 9.) More specifically, Moving Defendants argue that none of the claims subject to this motion are mentioned in his grievances currently pending before CORC, so any purported delay by CORC is irrelevant. (Dkt. No. 21, Attach. 4 at 7.) Moving Defendants also argue that Plaintiff conceded that he included "all relevant facts" that comprise his complaints in this action within the grievances currently pending before CORC. (*Id.* at 8.) Finally, Moving Defendants argue that Plaintiff's bare assertion that the grievance process was "unavailable" is conclusory and should be rejected in the face of undisputed evidence showing that Plaintiff both filed and appealed grievances at Clinton C.F. (*Id.*)

Plaintiff's allegations appear to implicate two of the "unavailability" exceptions to the PLRA's exhaustion requirement first identified by the Supreme Court in *Ross*. Specifically, that (1) "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[,]" and (2) "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1859.

I find that neither of the exhaustion exceptions are applicable here.

First, in *Williams*, the Second Circuit discussed the *Ross* exception of excusing exhaustion due to the existence of "opaque" prison regulations governing the process for appealing an existing grievance. *Williams*, 829 F.3d at 124. *Williams* and its progeny are

19

inapposite here, however, because the undisputed evidence shows that Plaintiff was familiar with the prison's grievance procedures. The record shows that Plaintiff filed three grievances (appealing two of them) but simply did not include any information regarding the claims at issue in this motion. The Court agrees with Moving Defendants that Plaintiff's bare allegation that the prison's procedures were so opaque that they were unavailable to him cannot defeat the undisputed material facts that show that he was aware of how to both file and appeal grievances.

Second, whether an alleged delay by prison officials in responding to Plaintiff's grievances should excuse exhaustion has no relevance here because, again, Plaintiff filed *no* grievance regarding his excessive force and failure to intervene claims. To be sure, courts in the Second Circuit are generally split as to whether a "delay" in responding to a prisoner's grievance may render the grievance procedures effectively "unavailable" for purposes of the PLRA's exhaustion requirement. *Compare Berkley v. Ware*, 16-CV-1326, 2018 WL 3736791, at *6 (N.D.N.Y. July 6, 2018) (Hummel, M.J.) (finding five month delay by CORC in rendering decision on appeal did not excuse Plaintiff from exhaustion requirement), *and Loccenitt v. Labrake*, 14-CV-6703, 2018 WL 826850, at *3 (W.D.N.Y. Feb. 12, 2018) (finding that a delay by CORC in rendering a decision on a plaintiff's appeal was not a defense to the exhaustion requirement), *with Henderson v. Annucci*, 14-CV-445A, 2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016) ("Since plaintiff has been awaiting a decision from CORC for more than two years with respect to his grievance, . . . such an administrative remedy is no longer available to him for purposes of exhaustion under the PLRA"), *and Rossi v. Fischer*, 13-CV-3167, 2015 WL 769551, at *6 (S.D.N.Y. Feb. 24, 2015) (finding that a prisoner's administrative remedies were "unavailable" where CORC did not decide appeal until more than four months after it was filed). But here, however, there can be no argument that Clinton C.F.'s administrative remedies were

"unavailable" to Plaintiff due to an alleged delay in responding to Plaintiff's grievances when there was no relevant grievance to "delay" a response to. Given that Plaintiff filed no grievance regarding the claims subject to this motion, I find that it is simply not relevant whether CORC's responses to the grievances Plaintiff did file were allegedly delayed.

For the foregoing reasons, I recommend granting Moving Defendants' motion for partial summary judgment and dismissing with prejudice[14] Plaintiff's Eighth Amendment excessive force claims against Defendants McShane, Ormsby, Stone, Provost, and Wood, and I further recommend dismissing with prejudice Plaintiff's Eighth Amendment failure to intervene claims against Defendants Bombardier and Ashline. Should the Court adopt my recommendation, I also recommend dismissing Defendant Provost from this lawsuit because there would be no remaining claims against him.

**ACCORDINGLY**, it is

**ORDERED** that the Clerk of the Court amend the docket report for this action as reflected in footnotes one, two, three, four, and five; and it is further respectfully

**RECOMMENDED** that the motion for partial summary judgment (Dkt. No. 21) be **GRANTED**, that Plaintiff's Eighth Amendment excessive force claims against Defendants McShane, Ormsby, Stone, Provost, and Wood be **DISMISSED WITH PREJUDICE**, and that

---

[14]    Moving Defendants' correctly recognize that the typical practice for a court granting summary judgment on a prisoner's claim for failure to exhaust their administrative remedies is to recommend that dismissal be without prejudice to re-file a complaint as a new administrative action, but dismissal with prejudice is appropriate where the time permitted for pursuing an administrative remedy has expired. *Thomas v. Kinderman*, 17-CV-00425, 2017 WL 8293605, at *6 (N.D.N.Y. Dec. 4, 2017) (citing *Berry*, 366 F.3d at 86-87); *see also Richard v. LeClaire*, 15-CV-00006, 2019 WL 5197041, at *9 (N.D.N.Y. May 7, 2019) ("Because [p]laintiff's failure to exhaust is at this point incurable, the Court recommends that summary judgment for failure to exhaust administrative remedies be with prejudice."). In addition to the fact that Plaintiff is no longer confined at Clinton C.F., it is undisputed that the time to file an administrative grievance regarding the claims subject to this motion has expired.

Plaintiff's Eighth Amendment failure to intervene claims against Defendants Bombardier and Ashline be **DISMISSED WITH PREJUDICE**, and it is further respectfully

      **RECOMMENDED** that Defendant Provost be **DISMISSED** from this lawsuit.

      Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

      It is hereby respectfully **ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[15]

Dated: May 24 , 2021
Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[15]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).