UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEREMY JOSEPH REYOLDS,

                          Plaintiff,

v.                                                                 9:20-CV-0686
                                                                   (TJM/ML)

T. STONE, C.O., Clinton Corr. Facility;
K. WOOD, C.O. Clinton Corr. Facility;
BOLA, C.O. Clinton Corr. Facility; GONYO,
C.O. Clinton Corr. Facility; W. LECLAIR,
formerly known as W. Leclar; T. KING,
Sergeant; D. BOMBARDIER, Sergeant, formerly
known as D. Bomradier; J. ORMSBY, Correction
Officer; C.O. MCSHANE; B. MCINTYRE,
Correction Officer; S. SISKAVICH, Correction
Officer; A. CHRISTON, Correction Officer; D.
SMITH, Correction Officer; N. DARRAH,
Correction Officer, formerly known as N. Darras;
P. CLANCY, Correction Officer; K. RANDALL,
Sergeant; Z. REESE, Correction Officer; J. NEPHEW,
Correction Officer; L. FORKEY, Correction Officer;
M. CARTER, Correction Officer; M. ASHLINE,
Correction Officer; A. CYMBRAK, Correction Officer,
formerly known as A. Cymbark; C. DELUTIS, Captain,
formerly known as C. Deltis; J. MAHAN, Correction
Officer; and T. BAXTER, C.O., Clinton Corr. Facility,

                          Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

JEREMY JOSEPH REYNOLDS
    *Pro Se* Plaintiff
Attica Correctional Facility
Post Office Box 149
Attica, New York 14011

LETITIA A. JAMES

Attorney General for the State of New York
  Counsel for Defendants
The Capitol
Albany, New York 12224

KONSTANDINOS LERIS, ESQ.
MATTHEW GALLAGHER, ESQ.
Assistant Attorneys General

MIROSLAV LOVRIC, United States Magistrate Judge

## REPORT-RECOMMENDATION

Currently before the Court, in this civil rights action filed by Jeremy Joseph Reynolds ("Plaintiff") against T. Stone, K. Wood, Bola, Gonyo, W. LeClair, T. King, D. Bombardier, J. Ormsby, C.O. McShane, B. McIntyre, S. Siskavich, A. Christon, D. Smith, N. Darrah, P. Clancy, K. Randall, Z. Reese, J. Nephew, L. Forkey, M. Carter, M. Ashline, A. Cymbrak, C. Delutis, J. Mahan, and T. Baxter (collectively "Defendants"), is Defendants' motion for summary judgement pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 48.)  For the reasons set forth below, I recommend that Defendants' motion for summary judgement be granted in its entirety.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Claims

At this procedural posture, the only remaining claim from Plaintiff's Amended Complaint is a claim of failure to protect asserted against Defendants pursuant to the Eighth Amendment and 42 U.S.C. § 1983.  (Dkt. Nos. 8, 38, 42.)  Plaintiff alleges that Defendants failed to protect him from an attack by approximately twenty other inmates that occurred on June 11, 2019, while he was incarcerated at Clinton Correctional Facility ("Clinton").  (Dkt. No. 8.)

### B.    Procedural History

On June 19, 2020, Plaintiff commenced this civil rights action by the filing of a Complaint.  (Dkt. No. 1.)  On August 11, 2020, Senior United States District Judge Thomas J. McAvoy issued a decision and order that granted Plaintiff's IFP application, and—after

2

reviewing the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A—dismissed Plaintiff's claims with leave to amend the Complaint.  (Dkt. No. 7.)

On August 31, 2020, Plaintiff filed the Amended Complaint (Dkt. No. 8), which is the operative pleading in this matter.  On September 11, 2020, Judge McAvoy issued a decision and order holding that Plaintiff's claims alleging: (1) excessive force pursuant to the Eighth Amendment against Defendants McShane, Ormsby, Wood, Stone, and Provost; and (2) failure to protect pursuant to the Eighth Amendment against Defendants Ashline, Bombardier, Bola, McIntyre, Siskavich, Christon, Smith, Darrah, Clancy, Reese, Baxter, Gonyo, Nephew, Forkey, Carter, Cymbrak, Mahan, Randall, King, LeClair, Delutis, McShane, Stone, Wood, and Ormsby, survived *sua sponte* review.  (Dkt. No. 9.)

On December 7, 2020, Defendants filed a motion for partial summary judgment.  (Dkt. No. 21.)  On May 24, 2021, the undersigned issued a Report and Recommendation recommending that the motion for partial summary judgment be granted.  (Dkt. No. 38.)  More specifically, I recommended that Plaintiff's Eighth Amendment excessive force claims against Defendants McShane, Ormsby, Wood, Stone, and Provost be dismissed and, to the extent that Plaintiff had alleged a failure to intervene claim against Defendants Bombardier and Ashline, that it also be dismissed.  (Dkt. No. 38.)  On July 30, 2021, Judge McAvoy adopted the undersigned's Report and Recommendation.  (Dkt. No. 42.  Based on Judge McAvoy's order, the remaining claims are outlined above in Part I.A. of this Report and Recommendation.

On November 22, 2021, Defendants filed the pending motion for summary judgment. (Dkt. No. 48.)

C.    **Defendants' Statement of Undisputed Material Facts**

Unless otherwise noted, the following facts were asserted and supported by Defendants in their Statement of Material Facts and not denied by Plaintiff in his response.  (*Compare* Dkt. No. 48, Attach. 27 [Defs.' Statement of Material Facts], *with* Dkt. No. 57 [Pl.'s Resp.].)

1.    Plaintiff was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") during the time of all events alleged in the Amended Complaint.

<u>**Procedural History**</u>

2.    Plaintiff initiated this action with the filing of a Complaint on June 19, 2020.

3.    Plaintiff filed an Amended Complaint on August 31, 2020.

4.    The Court *sua sponte* dismissed Plaintiff's Eighth Amendment deliberate indifference claim and Fourteenth Amendment equal protection and due process claims.  As a result, Plaintiff's claims that survived *sua sponte* review alleged (1) excessive force pursuant to the Eighth Amendment, and (2) failure to protect pursuant to the Eighth Amendment.

5.    On December 7, 2020, certain Defendants filed a motion for partial summary judgment, arguing that Plaintiff failed to exhaust certain claims alleged in the Amended Complaint.

6.    While the motion for partial summary judgment was pending, non-moving Defendants filed answers to the Amended Complaint.

7.    On May 24, 2021, United States Magistrate Judge Miroslav Lovric issued a Report and Recommendation that recommended dismissal of Plaintiff's (1) excessive force claims against Defendants McShane, Provost, Ormsby, Stone, and Wood, and (2) failure to intervene claims against Defendants Bombardier and Ashline.

8.      On July 30, 2021, Judge McAvoy adopted the Report and Recommendation.[1]

9.      Plaintiff's remaining claim is a failure to protect claim pursuant to the Eighth Amendment asserted against Defendants.

### The Incident

10.     At all relevant times Plaintiff was incarcerated at Clinton.

11.     On June 11, 2019, at approximately 4:40 p.m., there were approximately 346 incarcerated individuals in the North Yard (the "Yard") at Clinton when a fight broke out between incarcerated individuals, eventually erupting into a brawl involving approximately 45-60 incarcerated individuals.

12.     The Clinton staff was generally outnumbered by incarcerated individuals in the Yard by a ratio of 20:1.

13.     Defendant Bombardier was supervising the Yard at the time and called a "level,"[2] requesting that all available staff respond to the Yard.

14.     The incarcerated individuals who were fighting ignored several direct orders from corrections officers to cease fighting and lie on the ground.[3]

---

[1]      The Court notes that Defendants cited to Dkt. No. 41 in support of this statement of material fact not in dispute.  (Dkt. No. 48, Attach. 27 at ¶ 8 [citing Dkt. No. 41].)  However, Judge McAvoy's Order is at Dkt. No. 42.

[2]      The "level" system is used at Clinton by officers to call for assistance or designate an emergency.  A "level 2" is called for serious incidents involving incarcerated individuals where significant assistance from officers is needed in a designated area.

[3]      Plaintiff disputes this fact and cites to the affidavits of Defendants Baxter and Bombardier in support of his disputation.  (Dkt. No. 57 at 1, ¶ 13 [citing Dkt. No. 48, Attach. 3 at ¶ 5; Dkt. No. 48, Attach. 5 at ¶ 6].)  However, the affidavits of Defendants Baxter and Bombardier include almost identical verbiage regarding the incident on June 11, 2019.  (*Compare* Dkt. No. 48, Attach. 3 at ¶ 5, *with* Dkt. No. 48, Attach. 5 at ¶ 6.)  Defendants Baxter and Bombardier both allege that the 45-60 incarcerated individuals involved in the first altercation refused several direct orders to cease fighting and lie on the ground.  (Dkt. No. 48,

15.    Defendant Bombardier ordered the staff in the Yard to go to "Post 1," wait for a response team, and let the tower officers attempt to quell the disturbance with chemical agents.

16.    Defendants McShane, Ormsby, Stone, and Wood ("Tower Defendants") occupied elevated towers that overlooked the Yard at the time the fighting started, and they discharged canisters of chemical agents (tear gas) into the Yard to quell the fighting.

17.    In response to the tear gas, the fighting initially began to cease.  However, once the tear gas dispersed, the fighting resumed.[4]

18.    Tower Defendants fired more canisters of tear gas into the Yard and eventually the incarcerated individuals complied with officers' directions to cease fighting.

19.    The incarcerated individuals in the Yard were then escorted off the Yard and back inside the facility.

20.    Plaintiff was present in the Yard during the fighting and he alleges that he was attacked by approximately twenty unidentified incarcerated individuals.

---

Attach. 3 at ¶ 5; Dkt. No. 48, Attach. 5 at ¶ 6.)  As a result, I find that Plaintiff has not cited to evidence in the record that supports his contention that this fact is in dispute.

[4]    Plaintiff's Response appears to include two responses to Defendants' Statement of Material Facts Not in Dispute.  (*Compare* Dkt. No. 57 at 1-3, *with* Dkt. No. 57 at 4-7.)  In one of Plaintiff's responses, he appears to acknowledge that this statement is "true."  (Dkt. No. 57 at 2, ¶ 17.)  However, in another of Plaintiff's responses he appears to dispute this fact as asserted.  (Dkt. No. 57 at 5, ¶ 17.)  Notwithstanding Plaintiff's objection, the Court deems the fact admitted because Plaintiff fails to include any citation to the record.  Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of the record."); *see N.Y. Teamsters v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (upholding grant of summary judgment where the district court "reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a response to the statement of material facts not in dispute that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations"); *Jamison v. Metz*, 865 F. Supp. 2d 204, 207 n.1 (N.D.N.Y. 2011) (Suddaby, J.) ("[W]herever [the *pro se*] Plaintiff has [willfully] failed to cite record evidence in support of his denials of properly supported facts . . . the Court has deemed such facts admitted to the extent that they are not clearly in dispute.").

**Tower Defendants**

21.     Tower Defendants were employed by DOCCS as corrections officers and tower officers at Clinton at the time of the incident.

22.     Tower officers at Clinton are equipped with a gas gun, shotgun, AR-15, and a 9 MM Glock, with multiple rounds for each.

23.     Gas guns usually have twelve canisters of tear gas and are only pulled out in severe emergencies.

24.     In the event that any rounds have been fired from any weapon, a tower officer is prohibited from leaving his or her tower until another officer comes and confiscates the weapon(s) fired, and obtains information regarding the shots fired (e.g., the rounds fired, number of shots fired, etc.).

25.     DOCCS policies require the use of gas to quell a disturbance like the incident on June 11, 2019, before officers on the ground can respond appropriately and safely.[5]

26.     Defendant McShane was occupying Tower 10 when the incident began on June 11, 2019, and he initially fired one canister of tear gas into the Yard to quell the fighting.  When the fighting started again, he fired one additional round in an attempt to quell the fighting.[6]

27.     Defendant Ormsby was occupying Tower 12 when the incident began on June 11, 2019, and he initially fired one canister of tear gas into the Yard to quell the fighting.  Once the gas dispersed from the canisters initially fired by Tower Defendants, the incarcerated individuals continued fighting and Defendant Ormsby fired two additional canisters of tear gas.[7]

---

[5]     *See, supra*, note 4.

[6]     Record support for this sentence comes from Dkt. No. 48, Attach. 18 at ¶ 10.

[7]     Record support for this sentence comes from Dkt. No. 48, Attach. 20 at ¶ 11.

28.    Defendant Stone was occupying Tower 11 when the incident began on June 11, 2019, and he initially fired one canister of tear gas into the Yard to quell the fighting.  Once the gas dispersed from the canisters initially fired by Tower Defendants, the incarcerated individuals continued fighting and he fired three additional canisters of tear gas.[8]

29.    Defendant Wood was occupying Tower 8 when the incident began on June 11, 2019, and he initially fired one canister of tear gas into the Yard to quell the fighting.  Once the gas dispersed from the canisters initially fired by Tower Defendants, the incarcerated individuals continued fighting and he fired two additional canisters of tear gas.[9]

30.    In total, approximately twenty-two canisters of tear gas were fired into the Yard to quell the fighting.

31.    Pursuant to DOCCS policy, Tower Defendants were unable to leave—and did not leave—their towers during the incident because they fired tear gas.

### Responding Defendants

32.    Defendants Baxter, Bola, Carter, Christon, Cymbrak, Gonyo, Mahan, and Nephew were employed by DOCCS as corrections officers at Clinton at the time of the incident.

33.    Defendants King and Bombardier were employed by DOCCS as sergeants at Clinton at the time of the incident.

---

[8]    *See, supra*, note 4.

[9]    *See, supra*, note 4.  In Plaintiff's first response, he indicates that this statement is "True." (Dkt. No. 57 at 2 ¶ 29.)  However, in Plaintiff's second response, he indicates that this statement is "not true" and cites to the declarations of Defendants Bombardier, Bola, and Baxter.  (Dkt. No. 57 at 6 ¶ 29 [citing Dkt. No. 48, Attach. 5 at ¶ 6; Dkt. No. 48, Attach. 4 at ¶ 6; Dkt. No. 48, Attach. 3 at ¶ 6].)  Those citations to the record do not dispute this fact as asserted.

34.     Defendant Bombardier was working at Clinton on June 11, 2019, and stationed in the Yard when the fighting broke out.  He called a "level," seeking assistance from all available staff.

35.     Defendants Baxter, Bola, Carter, Christon, Cymbrak, Gonyo, King, Mahan, and Nephew (collectively with Defendant Bombardier hereinafter referred to as the "Responding Defendants"), were working at Clinton on June 11, 2019, although not stationed in the Yard at the time the incident began, they responded to the Yard upon receiving a call of a "level" there.

36.     Responding Defendants were given orders to pull back from the fighting and wait at Post 1.

37.     It is DOCCS's policy to use tear gas to quell disturbances like the incident on June 11, 2019, before officers can safely intervene on the ground.[10]

38.     Pursuant to DOCCS's policy, Responding Defendants waited for the use of chemical agents to quell the fighting, which eventually occurred.[11]

39.     Due to the magnitude of the incident, the orders for Responding Defendants to pull back from the fighting, and DOCCS's policy regarding the use of tear gas, the Responding Defendants did not have a reasonable opportunity to intervene in the incident until after the tear

---

[10]     The Court deems this fact admitted because although Plaintiff disputes the fact, he fails to cite to any evidence in the record in support of his disputation.  (Dkt. No. 57 at 2, ¶ 38); *see, supra*, note 4.

[11]     The Court deems this fact admitted because although Plaintiff disputes the fact, he fails to cite to any evidence in the record in support of his disputation.  (Dkt. No. 57 at 6, ¶ 38); *see, supra*, note 4.

gas was used to successfully quell the fighting, so that Responding Defendants were able to respond appropriately and safely.[12]

40.    None of Responding Defendants had any interaction, or recall having any interaction, with Plaintiff or recall observing him at any time during the incident.[13]

## Uninvolved Defendants

41.    Defendant Ashline was employed at DOCCS as a corrections officer at Clinton at the time of the incident on June 11, 2019.  She was not present at Clinton at the time of the incident because it occurred on her regularly scheduled day off.  Defendant Ashline was not called back into Clinton following the incident and was not present at Clinton at any time on June 11, 2019.

42.    Defendant Clancy was employed by DOCCS as a corrections officer and weapons training officer at Clinton at the time of the incident on June 11, 2019.  He was not present at Clinton at the time of the incident because it occurred on his regularly scheduled day off.

---

[12]    Plaintiff disputes this fact and cites to a portion of Defendant Baxter's declaration in support of his disputation.  (Dkt. No. 57 at 3, ¶ 40 [citing Dkt. No. 48, Attach. 3 at ¶ 9].)  The relevant portion of Defendant Baxter's declaration reads:

> In this instance it was not safe for us to go into the yard while the fighting was occurring.  I, and the other officers, followed protocol and did the most we could to protect the incarcerated individuals by firing chemical agents to quell the fighting.

(Dkt. No. 48, Attach. 3 at ¶ 9.)  This portion of the record supports the fact as asserted by Defendants.  Plaintiff also cites to the declarations of Defendants Bombardier and Cymbrak, which also do not contradict or create an issue of fact with respect to this assertion.  (Dkt. No. 57 at 7, ¶ 40 [citing Dkt. No. 48, Attach. 5 at ¶ 6; Dkt. No. 48, Attach. 9 at ¶ 8].)  As a result, it will be deemed admitted.

[13]    Plaintiff asserts that this fact is "not true."  (Dkt. No. 37 at 3, ¶ 41.)  However, for the reasons set forth in note 4, the Court deems it admitted because Plaintiff failed to include any record citation.

Defendant Clancy was called into Clinton on June 11, 2019, following the incident to investigate a number of weapons and rounds discharged and collect and replace weapons that were fired.

43.     Defendant Darrah was employed by DOCCS as a corrections officer and weapons training officer at Clinton at the time of the incident on June 11, 2019. He was not present at Clinton at the time of the incident because he had worked a shift earlier in the day that ended at 3:00 p.m. Defendant Darrah was called back into Clinton on June 11, 2019, following the incident to collect discharged ammunition, collect fired weapons, and replace fired weapons.

44.     Defendant Delutis was employed by DOCCS as a captain at Clinton at the time of the incident on June 11, 2019. He was not present at Clinton at the time the incident occurred. He had worked previously that day and his shift ended at 4:00 p.m. He was called back to Clinton after the incident to assist with its aftermath.

45.     Defendant Forkey was employed by DOCCS as a corrections officer at Clinton at the time of the incident on June 11, 2019. He was not present at Clinton at the time of the incident because he worked a shift that ended previously that day at 3:00 p.m. Defendant Forkey was not called back into Clinton on June 11, 2019, he did not return to Clinton until June 20, 2019.

46.     Defendant LeClair was employed by DOCCS at Clinton at the time of the incident on June 11, 2019.[14] He was a member of the Crisis Intervention Unit ("CIU") at Clinton at the time of the incident. He was not present at Clinton at the time of the incident because he

---

[14]     Defendants' Statement of Material Facts Not in Dispute states that Defendant LeClair was a corrections officer at the time of the incident. (Dkt. No. 48, Attach. 27 at ¶ 47 [citing Dkt. No. 48, Attach. 15 at ¶ 2].) Defendant LeClair's declaration attests that on June 11, 2019, he was a sergeant. (Dkt. No. 48, Attach. 15 at ¶ 2.) However, Plaintiff admitted the fact as asserted (Dkt. No. 57 at 3, ¶ 47) and the rank held by Defendant LeClair at the time of the incident is immaterial to the outcome of this motion.

was not scheduled to work that day. Defendant LeClair was called into Clinton following the incident as part of the CIU team.

47.     Defendant McIntyre was employed by DOCCS as a corrections officer at Clinton at the time of the incident on June 11, 2019. He was present at Clinton at the time of the incident but he was stationed at Gate 88 with the responsibility of letting people in and out of the administrative building. He did not respond to the Yard while the fighting between incarcerated individuals was occurring nor did he have any obligation to respond. After being relieved from his post at Gate 88, Defendant McIntyre went to the gym where incarcerated individuals were being held following the incident.

48.     Defendant Randall was employed by DOCCS as a sergeant at the time of the incident on June 11, 2019. He was present at Clinton at the time of the incident and was stationed at the annex. He did not respond to the Yard while the fighting between incarcerated individuals was occurring nor did he have any obligation to respond. After the incident, Defendant Randall was re-assigned from the annex to the gym and his only involvement in the incident was to supervise the incarcerated individuals that were escorted from the Yard to the gym following the incident.

49.     Defendant Reese was employed by DOCCS as a corrections officer at Clinton at the time of the incident on June 11, 2019. He was not present at Clinton at the time of the incident because it occurred on his regularly scheduled day off. He was not called into Clinton following the incident. Defendant Reese was not involved with the incident until June 20, 2019, when he performed a search of the Yard and recovered a weapon.

50.     Defendant Siskavich was employed by DOCCS as a corrections officer at Clinton at the time of the incident on June 11, 2019. He was present at Clinton at the time of the incident

and stationed in the mess hall.  He did not respond to the Yard while the fighting between incarcerated individuals was occurring nor did he have any obligation to respond.  While incarcerated individuals were being escorted from the Yard to the gym, he provided hallway coverage of the Upper F rotunda.

51.    Defendant Smith was employed by DOCCS as a corrections officer at Clinton at the time of the incident on June 11, 2019.  He was working in the law library at the time of the incident as an escort.  When the "level" was called, he locked down the library pursuant to level-2 protocol and then escorted the present incarcerated individuals back to their respective blocks. Once he escorted all the incarcerated individuals back to their blocks, Defendant Smith went to the Yard to assist.  By the time he arrived, the fighting had ceased, and incarcerated individuals were being escorted by officers inside the facility.  Defendant Smith did not see any incarcerated individuals fighting.  He took part in escorting incarcerated individuals back inside the facility.

52.    Defendants Ashline, Clancy, Darrah, Delutis, Forkey, LeClair, McIntyre, Randall, Reese, Siskavich, and Smith had no interactions with Plaintiff on the date of the incident.

**D.    Parties' Briefing on Defendants' Motion for Summary Judgment**

**1.    Defendants' Memorandum of Law**

Generally, in support of their motion for summary judgment, Defendants assert the following three arguments: (1) Plaintiff's claim should be dismissed against Defendants Ashline, Clancy, Darrah, Delutis, Forkey, LeClair, McIntyre, Randall, Reese, Siskavich, and Smith for lack of personal involvement; (2) Plaintiff cannot establish a failure-to-protect claim pursuant to the Eighth Amendment because Defendants were not deliberately indifferent; and (3) in the alternative, Defendants are entitled to qualified immunity.  (Dkt. No. 48, Attach. 28 [Defs.' Mem. of Law].)

First, Defendants argue that Plaintiff cannot show that Defendants Ashline, Clancy, Darrah, Delitus, Forkey, LeClair, McIntyre, Randall, Reese, Siskavich, and Smith were personally involved in the incident and thus Plaintiff cannot succeed on his constitutional claim against them. (*Id*. at 5-7.) More specifically, Defendants argue that Defendants Ashline, Clancy, Darrah, Delutis, Forkey, LeClair, and Reese were not present at Clinton at the time of the incident. (*Id.*) Further, Defendants argue that Defendants McIntyre, Randall, Siskavich, and Smith were present at Clinton during the incident but stationed in other areas of the facility and not present in the Yard while incarcerated individuals were fighting. (*Id.*)

Second, Defendants argue that Plaintiff cannot establish that they acted with deliberate indifference, and thus, cannot establish his failure-to-protect claim. (*Id*. at 7-11.) More specifically, Defendants argue that Tower Defendants took objectively reasonable steps to intervene and protect Plaintiff by firing one canister of tear gas into the Yard to quell the fighting—pursuant to DOCCS policy—and then shooting additional canisters of tear gas to end the disturbance when the incarcerated individuals began fighting again. (*Id.*) Defendants argue that if Tower Defendants had used any of the other weapons available to them—a shotgun, AR-15, or 9 MM Glock—Plaintiff would have been subjected to additional risks including possible death. (*Id.*) In addition, Defendants argue that Responding Defendants did not have a reasonable opportunity to intervene because DOCCS policy requires that chemical agents (like tear gas) be used to quell a disturbance before officers intervene. (*Id.*) Defendants argue that it was only after Tower Defendants discharged several rounds of tear gas into the Yard and the fighting stopped that Responding Defendants could safely and appropriately intervene. (*Id.*)

Third, Defendants argue that, in the alternative, they are entitled to qualified immunity. (*Id*. at 11-14.) Defendants argue that they did not violate a statutory or constitutional right and

the alleged constitutional violation was not clearly established at the time of the incident such that it was objectively reasonable for them to believe that their acts were lawful.  (*Id.*)

### 2.    Plaintiff's Opposition

Generally, in opposition to Defendants' motion, Plaintiff argues that the initial incident involved only approximately five incarcerated individuals fighting in the Yard on June 11, 2019.  (Dkt. No. 57 at 9-10.)  Plaintiff argues that the incarcerated individuals got on the ground but that the—approximately thirty-seven—corrections officers present in the Yard ran out of the Yard.  (*Id.*)  Plaintiff alleges that because the present corrections officers did not remove the threat and maintain control of the yard, he was injured.  (*Id.*)  Further, Plaintiff appears to argue that Tower Defendants had discretion to use live ammo instead of tear gas.  (*Id.* at 2, 6.)  Moreover, Plaintiff argues that the videos of the incident submitted by Defendants (Dkt. No. 52) are inadmissible because they were not provided to him during discovery.  (Dkt. No. 57 at 10.)[15]

### 3.    Defendants' Reply

Generally, in further support of their motion for summary judgment, Defendants assert the following four arguments: (1) Plaintiff's opposition was "grossly improper" because it was procedurally and substantively deficient; (2) Plaintiff admits that Defendants Ashline, Clancy, Darrah, Delutis, Forkey, LeClair, McIntyre, Randall, Reese, Siskavich, and Smith had no personal involvement in the alleged constitutional deprivation; (3) Plaintiff's response fails to raise a genuine dispute as to any material fact that Tower Defendants and Responding Defendants did not act with deliberate indifference; and (4) in the alternative, Plaintiff does not

---

[15]    The Court notes that—despite this argument that the videos are inadmissible—Plaintiff cites the videos when disputing a fact as asserted by Defendants.  (Dkt. No. 57 at 2 ¶ 37.)

dispute that Responding Defendants are entitled to qualified immunity. (*See generally* Dkt. No. 58.)

First, Defendants argue that Plaintiff's opposition was deficient for the following five reasons: (a) it failed to comply with Fed. R. Civ. P. 11(a) by including a proper signature or other required information, (b) it appears to include two separate responses to Defendants' Statement of Material Fact with conflicting responses to the statements in paragraphs 17, 25, 28, 29, 31, and 39, (c) it includes a blank page with the heading "Memorandum of Law in Support of Statement of Facts," (d) it contains a page with only three citations, one of which is incomplete, (e) Plaintiff was given an extension to file a response until January 24, 2022, but the cover letter included with his response (requesting that his response be considered with particular "leniency" because he had not had adequate time to prepare a response) was dated December 22, 2021, suggesting that he could have spent at least another month preparing his response before filing. (Dkt. No. 58 at 3-5.)

Second, Defendants argue that Plaintiff sets forth no evidence creating a genuine dispute as to any material fact that Defendants Ashline, Clancy, Darrah, Delutis, Forkey, LeClair, McIntyre, Randall, Reese, Siskavich, and Smith were not personally involved in the alleged constitutional deprivation and thus, those claims should be dismissed with prejudice. (*Id*. at 5.)

Third, Defendants argue that Plaintiff offers no substantive evidence that Tower Defendants and Responding Defendants failed to provide him with reasonable, good-faith protection during the incident on June 11, 2019. (*Id*. at 6-8.)  Defendants argue that their response to the incarcerated individuals fighting was reasonable in light of the undisputed facts that (a) Tower Defendants deployed approximately twenty-two canisters of tear gas to quell the fighting between forty-five to sixty incarcerated individuals, and (b) a "level" was called to

increase the number of corrections officers present in the Yard.  (*Id.*)  In addition, Defendants

argue that Plaintiff failed to demonstrate (or even allege) that (a) corrections officers generally

intervene in massive brawls before tear gas is deployed, and (b) the use of live ammunition by

Tower Defendants would have been more reasonable than the use of tear gas.  (*Id.*)  Further,

Defendants argue that the videos of the incident (Dkt. No. 52) are admissible in support of their

motion for summary judgement because they were identified in Defendants' mandatory

disclosures with a direction for Plaintiff to contact defense counsel to arrange a time to view, but

that Plaintiff failed to do so.  (Dkt. No. 58 at 6-8.)

Fourth, Defendants argue that even if Tower Defendants and Responding Defendants are

liable for the alleged constitutional violation, they are entitled to qualified immunity.  (*Id.* at 8-9.)

Defendants argue that Plaintiff failed to address their qualified immunity argument and as a

result, their motion should be granted.  (*Id.*)

## II.    RELEVANT LEGAL STANDARDS

### A.    Standard Governing A Motion For Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that

there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as

a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence

is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986).[16]  As for the materiality requirement, a dispute of fact is

---

[16]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to
create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation
omitted).  As the Supreme Court has explained, "[The non-movant] must do more than simply
show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus.
Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[17]  (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[18]  As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[19]

---

[17]    *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[18]    *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[19]    *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 56.1. What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1(b) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[20]–even when the non-movant was proceeding *pro se*.[21]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).[22] Stated another way, when a non-movant fails to oppose a legal argument

---

[20]    Among other things, Local Rule 56.1 (previously Local Rule 7.1[a][3]) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 56.1.

[21]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

[22]    *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1(a)(3) (previously Local Rule 7.1[b][3]); *Devito v.*

asserted by a movant, the movant may succeed on the argument by showing that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B.    Legal Standard Governing Claims Pursuant to 42 U.S.C. § 1983

To state a claim under Section 1983, a plaintiff must allege facts showing defendants' direct and personal involvement in the alleged constitutional deprivation.  *See Spavone v. N.Y.S. Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights.  *See Tangreti v. Bachmann*, 983 F.3d 609, 619-20 (2d Cir. 2020).

### C.    Legal Standard Governing a Failure-to-Protect Claim Under the Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  Courts have construed the Eighth Amendment to "require[ ] prison officials to take reasonable measures to guarantee the safety of inmates in their custody."  *Hayes v. N.Y.C.*

---

*Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

*Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996).  For example, the Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  In order to state an Eighth Amendment claim for failure to protect an inmate, a plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, and that prison officials acted with deliberate indifference to that risk and the inmate's safety.  *See Farmer*, 511 U.S. at 835-36.

To state a failure-to-protect claim, a prisoner must plausibly allege an objective component and a subjective component.  *See Hayes*, 84 F.3d at 620.

To plead the objective component, a plaintiff must plausibly allege a prison official's conduct was sufficiently serious, meaning the conduct "pose[d] an unreasonable risk of serious damage to his health."  *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017).

To plead the subjective component, a plaintiff must plausibly allege a prison official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm."  *Hayes*, 84 F.3d at 620.  "Evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk."  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

## III.   ANALYSIS

After carefully considering the matter, I recommend that the Court grant Defendants' motion for summary judgment in its entirety.

### A.   Plaintiff's Claim Against Defendants Ashline, Clancy, Darrah, Delutis, Forkey, LeClair, McIntyre, Randall, Reese, Siskavich, and Smith

For the reasons set forth in Defendants' memoranda of law (Dkt. No. 48, Attach. 28 at 5-7; Dkt. No. 58 at 5) I recommend that Plaintiff's claim against Defendants Ashline, Clancy,

Darrah, Delutis, Forkey, LeClair, McIntyre, Randall, Reese, Siskavich, and Smith be dismissed because there is no genuine dispute as to any material fact that they were not personally involved in any alleged Eighth Amendment constitutional violation.  As Defendants identified in their reply memorandum of law (Dkt. No. 58 at 5), Plaintiff failed to oppose this argument (*see generally* Dkt. No. 57).  Thus, Plaintiff is deemed to have "consented" to the dismissal of Defendants Ashline, Clancy, Darrah, Delutis, Forkey, LeClair, McIntyre, Randall, Reese, Siskavich, and Smith under Local Rule 7.1(a)(3).

**B.    Plaintiff's Failure-To-Protect Claim Against Tower Defendants**

For the reasons set forth in Defendants' memoranda of law (Dkt. No. 48 at 9-10; Dkt. No. 58 at 6-8), I recommend that Plaintiff's claim against Tower Defendants be dismissed because there is no genuine dispute of material fact that Tower Defendants did not act with deliberate indifference to a substantial risk of serious harm and Plaintiff's safety.

I find that no reasonable juror could find that Tower Defendants' actions were deliberately indifferent toward Plaintiff.  Tower Defendants took objectively reasonable measures to attempt to quell the fighting between incarcerated individuals and protect Plaintiff.

I find Plaintiff's undeveloped argument that Tower Defendants have "discretion to use live ammo" which could have been utilized instead of tear gas, patently unpersuasive.  First, Plaintiff does not argue that Tower Defendants should have used live ammo instead of tear gas. Instead, he merely states that Tower Defendants had discretion to use live ammo.  (Dkt. No. 57 at 2, 6.)  Second, as Defendants set forth, the use of live ammunition would have significantly increased any risk of harm to Plaintiff, who could have been struck by errant live ammunition. (Dkt. No. 48 at 10; Dkt. No. 58 at 7-8.)

In the context of Eighth Amendment excessive force claims, courts in this circuit have consistently found that the use of a chemical agent in a prison to quell a disturbance—including fighting among incarcerated individuals—was objectively reasonable. *See Quinones v. Rollison*, 18-CV-1170, 2020 WL 6420181, at *4-5 (S.D.N.Y. Nov. 1, 2020) (finding that the officer defendant was entitled to summary judgment because the plaintiff had "not established a material issue of fact as to the objective element of his excessive-force claim" where the officer defendant used a chemical agent against two inmates who were in the midst of a violent fight involving a dangerous weapon); *Beauvoir v. Falco*, 345 F. Supp. 3d 350, 369 (S.D.N.Y. Nov. 5, 2018) (granting the defendants summary judgment in a § 1983 case because the "use of the pepper spray . . . was permissible in the context of needing to maintain a baseline of order in the prison system"); *Berry v. City of New York Dep't of Corr.*, 12-CV-7819, 2014 WL 2158518, at *5-6 (S.D.N.Y. May 22, 2014) (granting summary judgment for the defendants on the plaintiff's excessive force claim where the defendant officer used pepper spray to break up a violent fight between incarcerated individuals); *Johnson v. Woods*, 07-CV-1018, 2010 WL 2039164, at *15-16 (N.D.N.Y. Mar. 2, 2010) (Homer, M.J.) (holding that the correction officers' actions in using a chemical agent to subdue the inmate were "calculated to ensure safety" and were reasonable where the inmate was uncooperative "aggressive and assaultive.").

### C.    Plaintiff's Failure-To-Protect Claim Against Responding Defendants

For the reasons set forth in Defendants' memoranda of law, I find that Responding Defendants did not have a reasonable opportunity to intervene in the fighting between incarcerated individuals on June 11, 2017, and thus, there is no genuine dispute of material fact with respect to Plaintiff's failure to protect claim against them. (Dkt. No. 48, Attach. 28 at 10-11; Dkt. No. 58 at 6-8.)

Plaintiff makes several assertions—with either no citation or citations that do not support the assertion—that a second fight between incarcerated individuals began only after Responding Defendants failed to intervene.

For example, Plaintiff cites virtually identical paragraphs in the affidavits of Defendants Baxter, Bombardier, Bola, and Cymbrak (Dkt. No. 48, Attach. 3 at ¶ 5; Dkt. No. 48, Attach. 4 at ¶ 5; Dkt. No. 48, Attach. 5 at ¶ 6; Dkt. No. 48, Attach. 9 at ¶ 6) related to their review of records maintained in the regular course of business.  (*See, e.g.,* Dkt. No. 57 at 1 ¶ 13 [citing Dkt. No. 48, Attach. 3 at ¶ 5; Dkt. No. 48, Attach. 5 at ¶ 6]; Dkt. No. 57 at 5 ¶ 13 [citing Dkt. No. 48, Attach. 5 at ¶ 6; Dkt. No. 48, Attach. 4 at ¶ 5; Dkt. No. 48, Attach. 3 at ¶ 5]; Dkt. No. 57 at 7 ¶ 40 [citing Dkt. No. 48, Attach. 5 at ¶ 6].)  However, the relevant portion of those paragraphs state, "Initially, the fighting incarcerated individuals began to cease fighting, but as the chemical agents dispersed, the incarcerated individuals resumed fighting.  Several more canisters of chemical agents were then deployed, and, as a result, the incarcerated individuals complied with staff direction to cease fighting."  (Dkt. No. 48, Attach. 3 at ¶ 5; Dkt. No. 48, Attach. 4 at ¶ 5; Dkt. No. 48, Attach. 5 at ¶ 6; Dkt. No. 48, Attach. 9 at ¶ 6.)  Thus, Plaintiff's citations to those portions of the record support Defendants' argument that Responding Defendants did not have a reasonable opportunity to intervene.

Moreover, Plaintiff cites to the videos submitted by Defendants (Dkt. No. 52).  (Dkt. No. 57 at 2 ¶ 37 [citing Dkt. No. 52].)[23]  However, the videos also support Defendants' argument that Responding Defendants did not have a reasonable opportunity to intervene.  A review of the

---

[23]    The Court notes that "Where the parties present conflicting versions of an incident and video evidence of the incident has been submitted on a motion for summary judgment, the Court must view the facts 'in the light depicted' by the video of the incident."  *Reed v. Roberts*, 18-CV-0809, 2020 WL 854355, at *6 (D. Conn. Feb. 6, 2020) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

videos included in Dkt. No. 52 reveal the following approximate timeline: (1) after the first round of tear gas canisters were deployed, the gas cleared around the 1:52 time marker, (2) fighting between incarcerated individuals resumed around the 2:13 time marker, (3) another tear gas canister was deployed, which cleared around the 2:43 time marker and fighting immediately resumed, (4) additional tear gas canisters were deployed, which cleared around the 4:03 time marker at which point, the fighting had ceased, and (5) Responding Defendants are observed in the Yard beginning to escort incarcerated individuals out of the Yard around the 5:47 time marker. (Dkt. No. 52.) Thus, at most, Responding Defendants had a window of approximately twenty-one seconds—between when the first round of tear gas cleared at the 1:52 time marker and when the fighting resumed at the 2:13 time marker—during which they could have intervened.[24] I find that this twenty-one second time-period was not a reasonable opportunity for Responding Defendants to intervene. *See Nix v. Lester*, 16-CV-0828, 2017 WL 3610576, at *5 (N.D.N.Y. Aug. 4, 2017) (citations omitted) ("To establish liability on the part of a defendant for failure to protect or intervene, the plaintiff must adduce evidence establishing that the officer had (1) a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene."); *Henry v. Dinelle*, 10-CV-0456, 2011 WL 5975027, at *4 (N.D.N.Y. Nov. 29, 2011) (Suddaby, J.) (quoting *Parker v. Fogg*, 85-CV-0177, 1994 WL 49696, at *8 (N.D.N.Y. Feb. 17, 1994) (McCurn, J.)) (holding that officers "cannot be held liable for failure to intervene in incidents that happen in a 'matter of seconds.'").

---

[24]    Plaintiff testified that the incarcerated individuals who were initially fighting stopped fighting for one minute and during that time Responding Defendants did not take any action to prevent the incarcerated individuals from beginning to fight again. (*Id*. at 87-88.) However, that assertion is not supported by the video evidence.

25

Plaintiff also cited to another portion of the affidavits of Defendants Baxter and Cymbrak which state, "In this instance it was not safe for us to go into the yard while the fighting was occurring.  I, and the other officers, followed protocol and did the most we could to protect the incarcerated individuals by firing chemical agents to quell the fighting."  (Dkt. No. 48 at 3 ¶ 40 [citing Dkt. No. 48, Attach. 3 at ¶ 9]; Dkt. No. 57 at 7 ¶ 40 [citing Dkt. No. 48, Attach. 9 at ¶ 8].) Again, these portions of the record support Defendants' assertion that Responding Defendants did not have a reasonable opportunity to intervene until after multiple rounds of tear gas were deployed by Tower Defendants and the incarcerated individuals ceased fighting.

It is undisputed that at the time of the incident, there were approximately 350-400 incarcerated individuals in the Yard and staff were outnumbered by a ratio of approximately 20:1.  (Dkt. No. 48, Attach. 5 at ¶ 8.)  Responding Defendants lacked a reasonable opportunity to intervene to protect Plaintiff from injury caused by the other incarcerated individuals who were fighting and not heeding the orders of Responding Officers to stop fighting and lay on the ground.  It was reasonable for Responding Defendants to wait until additional responding officers arrived and the disturbance was quelled by the tear gas before re-entering the Yard and escorting incarcerated individuals to the facility.  (*Id*. at ¶¶ 9-13); *see Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.").

As a result, I recommend that Defendants' motion for summary judgment be granted with respect to Plaintiff's claim against Responding Defendants.

### D.    Qualified Immunity

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the

challenged conduct." *Brown v. City of New York*, 862 F.3d 182, 190 (2d Cir. 2017) (citing

*Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  In other words, "[an] officer is entitled to

qualified immunity if (1) his conduct does not violate a clearly established constitutional right, or

(2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly

established right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008).  When determining

whether the right at issue is clearly established such that "the contours of the right are

sufficiently clear that a reasonable official would understand that what he is doing violates that

right," a court should ask "(1) Was the law defined with reasonable clarity? (2) Had the Supreme

Court or the Second Circuit affirmed the rule? and (3) Would a reasonable defendant have

understood from the existing law that the conduct was unlawful?" *Gonzalez v. City of

Schenectady*, 728 F.3d 149, 158 (2d Cir. 2013) (quoting *Anderson v. Creighton*, 483 U.S. 635,

640 (1987); *Young v. City of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)) (internal alterations and

quotation marks omitted).

      With regard to the second question, the Second Circuit has explained that, to determine

whether a right is clearly established, "we generally look to Supreme Court and Second Circuit

precedent existing at the time of the alleged violation." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir.

2015) (internal quotation marks omitted) (quoting *Okin v. Vill. of Cornwall-On-Hudson Police

Dep't*, 577 F.3d 415, 433 (2d Cir. 2009)).

      With regard to the first question, the Supreme Court has repeatedly admonished lower

courts "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*,

563 U.S. 731, 742 (2011).   "[A] case directly on point" is not necessarily required, "but existing

precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563

U.S. at 741.

I recommend that, in the alternative, Defendants' motion for summary judgment be granted with respect to Tower Defendants and Responding Defendants based on the doctrine of qualified immunity.  As set forth above in Parts III.B. and C. of this Report-Recommendation, Tower Defendants and Responding Defendants did not violate Plaintiff's statutory or constitutional rights and it was objectively reasonable for Tower Defendants and Responding Defendants to believe that they were not violating Plaintiff's constitutional rights.  *See Reed v. Roberts*, 18-CV-0809, 2020 WL 854355, at *6 n.5 (D. Conn. Feb. 6, 2020) (recognizing that "even if it were determined that the chemical agent was not necessary to restoring order, the circumstances depicted on the video make it clear that it would have been objectively reasonable for [the defendant] to believe his use of the chemical agent did not violate a clear constitutional right and he would be entitled to qualified immunity.")

As a result, I recommend that, in the alternative, Defendants' motion for summary judgment be granted with respect to Tower Defendants and Responding Defendants based on the doctrine of qualified immunity.

**ACCORDINGLY**, it is respectfully

**RECOMMENDED** that Defendants' motion for summary judgement (Dkt. No. 48) be **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[25]

---

[25]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 21, 2022
      Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge